We will now turn to the third case on the calendar, United States v. Fox, 22-1043. Joe, feel free to get settled at the podium, and again, please take time to adjust the microphones and get the lectern to wherever you'd like it. Thank you, Your Honor. And I understand we have AUSA Mango for the government, is that right? Yes, Your Honor. And you would like to reserve three minutes for rebuttal? Yes. Okay. Please proceed. Good morning. May it please the Court. Aaron Mango and my colleague, AUSA Nicholas Cooper, on behalf of the appellant, the United States of America. The government fully appreciates the deferential standard that applies to this proceeding. But this is one of those cases, Your Honors, when you evaluate and review the whole record presented below, that this Court should be left with a definite and firm conviction that a mistake has been committed. The district court's 21-page decision vacating the magistrate judge's detention decision was clearly erroneous in several respects, and I have four I would like to present to Your Honors. First, in the section that dealt with the weight of the evidence, which the district court found neutral for the government, at best neutral for the government, that clearly points towards detention. Here, there were recorded statements by the defendant, taken the day of the search warrant at his residence, in which he admits to supplying heroin and crack to drug-addicted escorts, which included his girlfriend. So that's count one, distribution of heroin. That's count two, distribution of cocaine base. It's count three, maintaining a premise for drug purposes. Well, wait. This is his house we're talking about for the premises, for one thing. Yes, Judge, Judge Lynch. If you give someone drugs at a party in your house, you are maintaining a premises for drug use under the statute? Well, I... First of all, answer that hypothetical, but then this is distinguishable. If it's a fleeting, one-time event... Well, if it's two times, what if every Saturday night you have a party? I believe that would be potentially a fact question for the jury, Judge. It's a fact question for the jury. But that's not so important anyway, is it? I mean, isn't the sting of this case, isn't the danger to the community here having to do with acts of violence? Yes. That's really what this case is about, right? Absolutely, Judge. At the end of the day. Because the district drug distributions, qua drug distributions, are fairly trivial by the standards that we see every day in the federal courts in terms of quantities. They are to the extent, though, Judge, that the drug distribution in this case resulted in the defendant's drug distribution, resulted in the overdose. But that's a disputed fact, is it not? It is a disputed fact, but it's the government's position that these recorded statements, and that's why I'm focusing on the weight of the evidence first, because that is a factor that the district court judge found neutral. Disputed facts can form the basis of a detention decision. Yeah, absolutely. Counsel, did you include the transcript or give us a recording of these statements as part of the appendix? If so, I missed it. No, Judge, and that's what I want to make... Can I just ask you why? It seems like you're putting a lot of weight on some of this evidence, and the only thing that you sent to us are the second-hand descriptions of the evidence that was played and provided to the district judge. And if that's the crux of your argument, why did you not give it to us? Judge, that's a good question. In our opening brief, we do highlight that we will make available and provide to the court any documents and recordings. Yeah, but the idea is you do it in advance. That's why we have an appendix. And I was kind of baffled as to why the appendix included transcripts where you're talking about the evidence. We're not going to find, I mean, I don't think you can expect us to find clear error in a factual finding if you don't show us the facts. I can agree with that, Your Honor, and that's why it is the government's position that it would be very important for Your Honors to listen to these admissions that the government claims the defendant made the day his house was searched and then ultimately arrested. We can provide those tomorrow to the court in a post-hearing submission. We think those are very important because he does admit to supplying heroin on two occasions. I could read the quote into the record in terms of it's at 934 and 40 seconds in the morning, 934 a.m. In the times you did have some referring to drugs, they had just been talking about heroin and crack that he kept at the residence, and you were giving them dope instead of money, did they ever get incapacitated? Answer, I had to Narcan two people. So there is a dispute in the briefing as to the import of his statements, but it's our position, Your Honors, that when you hear the actual statements, there is no dispute. In fact, we played just over 45 minutes of those recorded statements for the magistrate judge. Those recorded statements were submitted to the district court judge. And the district court judge said he listened to the tape. He listened to a jail call, Your Honor. We played a jail call at oral argument. At oral argument, but didn't you provide him with the tape-recorded statements? We did. And didn't he say, I may be mistaken, that he listened to it? I don't believe I heard that at oral argument or it's in the decision. I looked again, Judge, and if I missed it- And of course we haven't listened to it because you didn't give it to us. And again, I apologize, Judge. We will provide that tomorrow- Can I come back? Bail decisions are inherently prospective and predictive, right? And it's very common that we- I think it's part of the root of the presumption that when people are engaged in certain kinds of activity, that's ongoing. Most of your drug cases are ongoing conspiracies. Here we have a self-serving but rather emphatic claim that all of this behavior was in the past. And we have a very vigorous dispute about whether all of the behavior, the sexual behavior, that would appear not the sort of thing most people would consent to are in fact things that were consented to given the particular proclivities of the people involved, right? So what I'm trying to figure out is why is it clearly erroneous for the court below to have said, determined, that given the rather stringent conditions that he was imposing, there was no real risk that this behavior would take place in the future? And I realize you've got the jailhouse phone call thing, which he claims is fantasy. I mean, these are all what the grist of a trial would be. But why is it clearly erroneous for the court to reach a conclusion that I can set this up in such a way? And, you know, he provides very stringent conditions where there's no risk that this is going to recur in the future. Yes, Judge Lynch. In this case, it did continue to occur. And so we have a history. But when you say it did continue to occur, you've got these photos from post-2020 that all involve the girlfriend who says she consented. That's not true, Judge. In fact, there was one photograph that I held up during oral argument before the district court judge. And it was an escort lying on her back with cocaine between her breasts. What year is that? What's the date of that? That was April of 2021. And I identified that for the district court and told the district court judge. Wait, could you tell us where you identified it? Because I have to say, again, because you provided us with the transcript, right? Not the evidence. Not that we really, I really don't want to look at these things. But it seemed at times that everyone was talking past each other. And speaking highly inspecifically. So I would hear an allegation or I'd read an allegation saying, from the defense saying, these were all the girlfriend, you know. And that would be in the context of a discussion that there were all these photos seized both before and after the girlfriend was on the scene. And then later, someone would be talking and saying, not all the photos were of the girlfriend. But I didn't see anything that specifically said, well, this is one not of the girlfriend from April 2021. So it would be very helpful. Could you direct us to where in the record there is evidence proffered to the court that there is a photo not of the girlfriend from April 2021? Because that would be very helpful. Yes, Judge Nardini. On appendix page 147 is where this issue came up. 147? Yes. All right. Hang on a second. Let me just, bear with me while we get that, OK? Yeah, OK. I've got it. On page 147 is where the court asked the images are of his girlfriend, right? Line 13. Yes. Yes, Judge Nathan. And I say very clearly, no. And there's some of the data there. But those are three images. There are many images of which that would be a perfectly accurate description. They are not images of his girlfriend. But that's, he says, those are all the pre-2020 ones. And the post-2020 ones are not. And nothing in this transcript says, no, I'm holding up a picture that is from April of 2021. And it shows an escort. We go back two pages, Your Honors. On page 145, that's where I was going to go to next. On page 145, this is where I pulled up. This is starting at line 5. Page 19 of exhibit 5. And I held it up for the district court judge. And I would submit to Your Honors by looking at the photographs. And I, Judge Nardini, I understand. Let's just take it step by step. Page 145, you list, you say, page 19 of exhibit 5, powder cocaine, which you describe in a certain way, April 22, 2021. But you don't say there, and that's not the girlfriend. You're absolutely right, Judge. And then later, when we go to page 147, and there's this discussion about whether all of these are images of the girlfriend, you say some of the photos are victims. Where do you say that that photo on April 22 is not the girlfriend? Where do you say that? You're right, Judge. I don't. And I look back. So where is that before us? It is not until you look at the photographs. Because when I held up the photograph, again, I submit to Your Honors, it was apparent, and it should have been apparent, to Judge Bilardo that that was not the girlfriend. She has different- You have, at least cited in this record, a photograph of an alleged victim. Is it the same one who provided a statement that she'd been raped? That is a different, it's a different victim. There are photographs of the victims who had been raped. And those go back to 2020? Yes. Yes. So then you've got a non-girlfriend image- Or before. Or before. Sorry, Judge. Or before. OK. You do realize how difficult this is, though, for us, right? When you're making assertions now, and they may be 100% accurate, that aren't in the record. I understand. You're expected to review the factual findings of a district court. And if you don't say to the district court, I'm showing you a photo, and it is not the girlfriend, you expect us now, by the way, you haven't submitted the photos to us, to then say that it is a clearly erroneous factual finding? You understand the difficulty that that presents? I do, Judge. I do acknowledge that. And we will provide those photographs and the jail recording. And you assume that we're going to be in a position to look at some photograph and know? And I don't particularly want any sort of graphic depiction or graphic discussion right now. But in general, how is it that you propose that if you send us a copy of this photo, we are going to be able to discern who is or is not in this photo? Is there some discerning mark? Is there a face of a person? Yes, Judge. In the photographs that we submitted to the magistrate judge, those were exhibits two. Those were exhibits two to our docket number eight on the 22MR55 docket. And I know I'm talking a lot of references. Get right to my answer, if you can, and provide background if you need to. How is it that you will expect us to look at that photo and say that it was clearly erroneous for the district court to conclude that that was the girlfriend? It will be apparent that it is not. It is not the girlfriend who claims she was in the nine photographs that we submitted to the magistrate judge. And is that from the physical appearance of the person? Yes. And how is it that we know what the girlfriend looks like? She's depicted in the exhibits that were submitted to the magistrate judge. And those were exhibited in docket number eight that we submitted to the district court judge. So those are clearly identified as person number one, said the girlfriend. And you're saying if we were to look at this other photo that is of a later date, we will be able to say without a shadow of a doubt, there's no way that's the same person. Absolutely, Judge. In fact, there's a photograph of an African-American victim. The girlfriend is not African-American. So in our view. Are you talking about the April 22, 2021 photo? No. No. This is a different photograph from exhibit seven to document number eight. Specificity is very important for us. Yes, Judge. So if you're going to reference a particular exhibit, we need to know what you're talking about. We can't just have these generalities like there's another photo. That doesn't help us, right? Yes. If you want us to make specific findings, we need to be talking about specific evidence. I can put that on the record right now if you'd like, Judge. I have the- Tell us which photos. If you're suggesting that we need to compare certain photos, not that I don't think any of us want to, but if that is what you propose we need to do to make factual findings, we need specifics. Judge, page 24 of exhibit seven, which was submitted with docket number eight, again, the government- Page 24 of exhibit seven is not one of the things that you were showing the judge on appendix 145. Those were page 19 of exhibit five and page 13 of exhibit six. Are those ones that we should be looking at? Or now you're telling us we should be looking at something completely different than the ones you just told us or the ones that Judge Villardo had thrust in his face and nevertheless declined to see what was obvious to all from those photos. But there are other photos that are so obvious and those are the ones you're going to give us now? There are other obvious photos, Judge, yes. But what about these photos that were shown to the judge? Are those the ones we're relying on? Or now we're not relying on those. Now we're relying on something else. One of those, Judge, April 22, 2021, page 19 of exhibit five, March 21 of 2021, exhibit six, page 13. Yes, and that last one I referenced, Judge, it is believed to be the girlfriend. So exhibit six that was shown on page 145 is, in fact, the girlfriend you're telling us? That one is. That one is, but exhibit five, that one is not. And I do need to correct. This is a transcript from the oral argument. I apparently misspoke. It says exhibit six. It was exhibit seven. And so exhibit seven are the photographs that depict sexual activity between the defendant, his girlfriend, and other escorts. That's exhibit seven. Exhibit five is the photographs that depict the defendant's drug evidence from his phone and drug use by the defendant's girlfriend and other escorts. So that includes, just to be clear, we're looking at page 145. You're saying that page 19 of exhibit five depicts someone who is not the defendant's girlfriend and that it's dated April 22, 2021. Is that correct? That's correct. And the conclusion you would like us to draw from that is that the defendant was lying to the court or to probation when stating that his activity with other escorts had ended prior to whatever the date was. Is that the gist of it? That is the gist of it, Your Honor, yes. And just so if we could just stay on this point, what other exhibits, very specifically, did you produce to the court that you think we need to look at that similarly contradict in a clearly erroneous way any conclusion that the defendant had stopped this conduct with other escorts? And I can't remember what the cutoff date is. It was September of 2020, is what the defendant claimed. So what other exhibits? Are there specific ones that you say, if we look at that, we will conclude that the district court made a clearly erroneous factual finding? Judge, there's a photograph of cocaine base on a scale. What is that? Now we're dealing with drug use? Well, yes, Judge, because he claims he transitioned out of this lifestyle in September of 2020. And so I think it's very important to highlight. Where did he say specifically, and again, maybe you just need to help me. Where did he say specifically, I have not used drugs since September 2020? That is the putative false statement, in your view? That would have been in his recorded statement, Judge. Which he didn't give us. That's correct. Right. What about the text messages and searches? That's correct, Judge Nathan. There was a variety of Verizon phone records that were presented to the magistrate judge, shown to the magistrate judge, submitted to the district court judge, which show over and over and over Verizon telephone records. There's 169 times the defendant had contact with a telephone number known to be an escort, which ended in December 18th of 2021. 108 times with a different telephone number. I'm sorry, just back up there. Ending December 18th, 2021? Yes. When did that period begin? You say 169 times, and you gave us the end date. What's the beginning date? Yes, your honor. If I can just have one second. It's in the. The beginning date for that, Judge, is May 26th of 2021. May 26th? Of 2021. Okay. This I'm reading for the court's reference is Exhibit 2 to Docket Number 8 on 22-MR-55. The second telephone. Are you proposing to now give us all of this stuff, or are we supposed to go and get it from the district court ourselves? We will provide it to you tomorrow, Judge, if that's acceptable. I don't want to force upon the court exhibits, but clearly it's important to the government's analysis, and we would like you all to have them. There's other telephone records. Nothing that's not part of the record below, but just hadn't been supplied in the appendix. Correct. They were all, everything I will provide is part of the record below. And some of these matters, I'm assuming the photographs and whatnot, I trust were placed under seal? Correct. Those can be found as sealed. I believe it's Docket Number 11. You also understand that those things, I assume, I hope were not electronically filed, and I hope that they exist on paper, and I can tell you that if there are sealed matters like that, any sealed materials like that cannot be provided to us electronically. It will have to be provided in hard copy, in sealed envelopes, obviously with a copy to counsel, but we need those in sealed envelopes. We will have them to your honors tomorrow, which would include the recorded statements, the jail call that was referenced, and then all the exhibits that were presented to the district court judge, Exhibits 1 through 8, which include Exhibits 5, the drug evidence, and Exhibit 7, the sexual activity evidence. Are these exhibits labeled with the metadata of the dates? The Exhibits 5 and 7 are not labeled with metadata. How are we going to cross-reference and know when we see these exhibits, what are the relevant dates of these things? How are we going to know that? That will be a difficult task, admittedly, your honor, because it will have to make some backtracking to the record. How are we going to figure this out? I can include that in my submission to the court. I can summarize what I... So it's going to be a new brief, basically, this time supported by a new appendix that we are going to have to rely on to find that the district court clearly erred. Well, I could summarize what I argued below before the district court. Yeah, I know, but what is coming to us is, in effect, going to be a major submission, because it's not going to be just a bunch of pictures. There's going to have to be pictures and also evidence that tells us when those pictures were taken that we cannot tell. It's not like it came as a screenshot off somebody's phone that has, for whatever reliability that would be given, a date that is timestamped on it. It would be some evidence extrinsic to the photographs that by some form of affidavit or expert testimony or something that's cross-referenced to his recorded statements or something that tells us what you are relying on to tell us the dates, all right? And we can't be looking at... If we're reviewing what the district court did, we need to be looking at the record before the district court, right? Right, and that's... We can't be taking additional evidence here. Right, it sounded like, Judge Lynch, you would like... Understand what you're going to give us that is going to demonstrate what you are representing to us, that's all. But what it sounds like is it's not just, here are the pictures, here is the transcript, it all speaks for itself. It's going to have to be with connective tissue. So in effect, what we're going to get is a new brief and a new appendix. To some extent... A supplemental brief and a supplemental appendix that will give us evidence that we have not been given in connection with either the emergency motion or the final submission of the brief and appendix. But now we're going to get it and then, I mean, I don't know, maybe this is going to be such a laydown when we see it that the defense will throw up its hands. But I'm guessing that Mr. Durland's first request to us, assuming he's... Well, the first thing is he's going to object to this whole procedure. But then the second thing he's going to say is, well, if you let him put that in, I have to have the opportunity to put in an additional brief responding to the new material that the government is giving us. And I take it you have no objection to his doing that? That's correct, Your Honor. That's correct. I will limit my commentary to the exhibits that are going to be provided to Your Honor. And only on observations that were already made to the district court? Yes, Your Honor. Things that are in the record already? Yes. Right, and I mean, part of the issue is the way the bail hearings go is a lot is dependent on the government's proffering. I mean, it's not... You don't get a trial record that as neatly... You have the government saying we have, for example, phone records that show contact with a known escort past the date that he represented that he stopped engaging in this behavior, right? It's that sort of thing. So it's not as though you said, here's Exhibit 5. This is what it is. I'm entering it into the detention record. That's right, Judge Nathan. There was commentary with all of these exhibits that were provided, not only in briefing, but during oral argument as well. And I will try to capture that accurately so that the record... You mentioned the Verizon records. What about the searches? Yes, there are internet history searches, just general internet history, so you could see what web pages were visited. And those show there were a number of escort, Buffalo escort web pages visited all the way up to January 28th of 2021. That was... I'm sorry, 2022. That was five days before the execution of the search warrant. And then you can go into the Google search history. And the Google search history showed other searches with very graphic language in January 5th of 2022, January 27th of 2022. And then all of those phone numbers, many of those phone numbers that we've either discussed or were searched on January 28th of 2022, were then found in a subsequent contact on the defendant's phone in which he had commentary for one of them passable because seems easy to get a lot for a little. And is making references to sort of internal notes that he is creating as to what escorts he likes. When he talks about how they might be into anal sex, which we know from at least two victims is something that he is interested in because they claim to have been raped by him when they were bound to a structure that was recovered from his residence during the search warrant. Can I ask something about the timeline? Has Mr. Fox actually been released? No, Judge. I inquired last week on that with the probation officer. You can fill in if you're updating us. I know it's outside the record, I suppose, right now. But why don't you tell us what the status is? It is, Judge. So it was, if you read the, and I know you all did, the oral argument transcript, it was somewhat of a, seemed to be somewhat of a change of position or a little bit of a surprise to the defendant that the court and probation wanted the defendant to live with the parents. The defendant wanted to be released back to his own residence with his girlfriend. It's part of the reason we put that jail call in because it highlights their relationship. As that came up, the probation officer last week informed me that the parents who are elderly, not elderly, but in their late 70s, so I apologize. If that's not elderly. I learned from the CDC in March of 2020 that I am elderly. So I'm not offended by it. I mean no disrespect, Your Honor. They are in their late 70s and the probation officer informed me that the father who has some serious medical issues is trying to get a handle on those serious medical issues before agreeing to have the defendant come live with him and essentially be the custodian that the district court is requiring the father be. So can I ask you, and I'll ask opposing counsel too, as a practical matter, we don't even know if the order that the district court put into place will ever come to pass. That's true. And it may, it sounds like it may be in flux right now, whether or not the father might, or the mother, I don't know. Well, is the father, was he directed to be placed in the custody of his father, Donald Fox, who must execute an agreement promising to supervise, et cetera, et cetera. So we have the order, but the conditions may not be met. They might not be met or the father might decide he's agreeable to it. And then there's some posting of property that needs to happen. And that due diligence has not occurred yet in terms of... And setting up of cameras of some sort. Correct. At the parents' residence. So that hasn't happened either, the cameras, I suppose. If they don't even know whether the father is willing to do this... That's what I understand, Your Honor.  We don't know whether the district court would be willing to enter any release order if the father's house were not available and all the conditions in the release order were not able to be fulfilled. We just don't know whether the court would look at some backup set of conditions or whether the court would take the view that, no, if I can't get every condition on this list, he needs to be detained. So we just don't know that. That's correct. There's nothing in the record in terms of how the judge, the district court judge would reconsider or reevaluate. Well, that would have to be a different order. There's an order in place now which you are asking us to review. If we were to determine that that one was not clearly erroneous, that would not mean that some other set of conditions, as of now, totally speculative, that might be imposed by a judge if these conditions cannot be met would similarly not be clearly erroneous. Agreed completely, Your Honor. And you'd have a whole, presumably, new hearing on a modification request. Agreed. Do we have any sense, and I'll be curious from the appellant or the appellee, we don't have any sense of the time frame within which we're going to know whether this is even a realistic possibility in the real world? No. We just don't know. And I understand sometimes there are simply realities out there that none of us can control, but I just, okay, so we don't know. I've asked the probation officer multiple times. Last week was not the first time I spoke to him. Why don't we hear from the appellee? We'll hear from you again. You've reserved three minutes for rebuttal. And Mr. Durland, if you wouldn't mind maybe just beginning where we left off, whether you agree with the government's recap of where things stand as a practical matter right now or whether you have anything else to add. And I understand at this point we're actually talking outside the record, but I think it would be helpful for us to just know the state of play. Certainly, Judge Nardini. The state of play is that Mr. Fox, Donald Fox, has taken some steps to implement Judge Pallardo's order. There are, as Judge Nathan, you pointed out, there are a lot of things that have to be taken care of. The cameras are in place. This is a home where the cameras were already there. I'm sorry. So the cameras are in place at the father's residence? Yes, Your Honor. Mr. Fox had cameras already. So the only thing that needs to happen... Mr. Fox, the defendant or the parent? Excuse me. Donald Fox, the parent, had cameras at his residence already. The only thing that needs to happen with respect to the cameras is that pretrial services needs to approve the feed and make sure that the cameras' specifications are aligned with what Judge Pallardo ordered. If they don't, then additional cameras would need to be installed. And we don't know the status. That's something that has not been resolved as of now about whether the presently installed cameras and systems would satisfy the release order. Is that correct? We believe that they would, but it's not resolved because pretrial services is the arbiter of that particular question. The reason for... That's more what I meant. Pretrial services has not given their blessing as to their view about whether the currently existing camera system is in compliance or would be in compliance with the release order. That is correct, Judge Hidini. The other thing is just that Donald Fox had a medical issue so he was in the process of setting up these... He had to get a landline put in which is necessary for the location monitoring and various other things. But I entirely accept the idea that it's possible that the conditions are never fulfilled. And this was actually discussed with Judge Pallardo at the end of the oral argument. He asked defense counsel, myself, you've proposed that Mr. Fox go and live with a girlfriend. Is dad amenable? And we said, Your Honor, we'd have to check. But the court is going to have to order whatever it feels is sufficient or necessary, but not more than sufficient to reasonably assure the safety of the community and the defendant's appearance. And the defendant will either meet those conditions or not. This is the government's appeal. The government wants to foreclose the opportunity for Mr. Fox to be released on the conditions that Judge Pallardo has ordered. Right. So all of this is interesting as to what the current state of play is, but you're not in a position to say, well, he's been at liberty for a week and there hasn't been any problems because he's not at liberty. And as far as the government's appeal is concerned, there's nothing moot about this because if Mr. Fox Sr. recovers tomorrow, gets all the landline in place and the property posted and whatever, at any moment, Mr. Fox Jr. could be released. And so that's the order that we are reviewing here. Correct, Judge Lynch, precisely. Whether it's tomorrow or six months, the government's free to withdraw its appeal, but until it does, this is a live controversy. Right. Because at any point, as long as the order is in force and is unreversed, it is theoretically possible and maybe, and it's nothing, it's not, doesn't seem remotely impossible, that all those conditions could be met. Absolutely correct. They have not been met yet. That's absolutely correct. And unless the court has other questions on the status issue, I'd like to turn to the merits. And I think I can short circuit this extensive discussion about exhibits and timestamps because that entire issue is waived. The government is not contesting the September 2020 cutoff. So Judge Bilardo made a factual finding. His factual finding 185 to 87 of the appendix is no sex with escorts after September 2020. The government presented evidence of contact, no evidence of actual sexual liaisons. They have this picture that they claim is from April of 2021. And I don't really want to describe it on the record here, but it sounds rather graphic and of a sexual nature. Yes, Judge, they have a picture from April 2021. My point is in terms of the issues that have been briefed. You said no sex with an escort after September 2020. They say it's, I'm sorry, Judge, go ahead. Well, if that's the finding, right? No sex with escorts after September 2020, they've proffered something that sounds like the opposite from April of 2021. Well, Your Honor, a couple of points on that. First, this photograph is not sex with an escort. Okay, pretty close. Well, it's not. Close enough to make a pretty strong inference the other way. Well, let me just finish the waiver. Let's define. Let me just finish the waiver point, Your Honor, because Judge Bilardo makes this finding. Well, actually, no, just stick with my point here about that photo. Why does that not contradict your client's claim that there's been nothing going on? No sex with escorts since September 2020. Well, because it's not a photograph depicting sex with escorts after September of 2020. I mean, so what? Contact with escorts allows the inference of sex with escorts after the time he said, I'm not doing that anymore, doesn't it? Well, we need a picture to infer continuing conduct when it's evidence of continuing conduct. I'm not saying that would be an impermissible inference. What I'm saying is it's not the inference that Judge Bilardo drew, and it's not clearly erroneous. Let me run through the evidence that is actually in the record with respect to contact with escorts. So the government conducted surreptitious surveillance of Mr. Fox, December of 2021, January of 2022, February of 2022. Well, hang on. Now you're just going to point to investigative techniques that didn't turn up evidence, right? Didn't turn up evidence during the precise period when Mr. Fox was... Let's talk about the evidence they do have that is indicative. So, you know, let's focus on the evidence that is in the record, not the, well, and they don't have extra evidence. Let's talk about, well, we have the photos. We have him texting with escorts, right? That's correct, Judge. There are text messages between Mr. Fox and escorts during the period, though, when the surveillance is in place. So again, the point is that Judge Villardo, it was entirely within Judge Villardo's discretion to find there's contact, there's reason for concern, there's reason for a lengthy laundry list of conditions to meet that concern. But it is not correct to conclude, says Judge Villardo, and I think entirely reasonably, that Mr. Fox actually followed through. He didn't follow through at a time when he had no conditions, no criminal prosecution hanging over his head. And it's not just the surveillance, Your Honor. There are thousands upon thousands of photos on that phone. There are lots of photos with escorts in 2018, in 2019, in early 2020. We dispute the government's characterization of this photo. We don't think the government should get some... Actually, can I ask you that? They are saying that if we look at this photo, which I don't think any of us have seen, that it will become abundantly clear it is not the girlfriend. Is it your view that if we look at it, it could be the girlfriend? I've not looked at this. I don't know. It's hard to say whether the court would feel confident in making that kind of facial ID. I guess I could say enough that it gives me pause. Your question certainly gives me pause. So by that measure, I suppose I would say I don't know that it's abundantly clear. And more to the point, there's no identification of that person. The government can't come up here to the Second Circuit and say, well, this is not the girlfriend. It definitely isn't. What we have is we have a whole bunch of photos. We have the government did not supply metadata for any of them. This second batch of submissions, you recall that there were a packet of photos submitted to the magistrate judge. Those are all Mr. Fox's girlfriend. That was the subject of Judge Bilardo's comment when he said Ms. Della Valle has affirmed that these are all her. He wasn't talking about the entire body of photos submitted to him. It was submitted. He had the exchange with the government where he asks and the government says, no, there are some photos of escorts. And more to the point, he did not misunderstand the danger that the government was positing. I don't understand the payoff to the government's argument. They say there's one photo in April of 2021. And that means that he has this irresistible compulsion such that no conditions whatsoever will prevent him from just walking out the door and doing what we say he can't resist. Even if it's true, we do not agree with it. And we don't think there's near enough factual material in the record for the court to make this conclusion. But let's say it's true that there's a single photo of an escort in April of 2021. What about May, June, July? In the government's theory, he should be patronizing escorts throughout this period. On the government's theory, there should be drugs in that house because that's the currency that he allegedly uses to consummate these commercial transactions. When the government searched his house, no drugs, no drug paraphernalia, no drug residue, no escorts. Our point is there is a wealth of evidence in the record that Judge Villardo could use and did use. It was explicitly argued by the defense. He adopted the arguments. 185 to 87 of the appendix is his decision explaining, going through each category of evidence that the government put forward to raise a concern about Mr. Fox's continued interest in escorts. Judge Villardo said an interest is concerning, but there's also no follow-through. We know that from the record. And again, I really want to underscore this point. That is not a point that has been contested in the briefs. Judge Villardo made the factual finding, page 16 of the government's brief, accepts the premise that Mr. Fox's escort activities were entirely historical. Those photos that Mr. Mango pointed out to the court, those are all drug photos. That's how they were presented to the district court. And that is how they were presented to the court. Right. The one we're talking about on April 22, 2021. Yes, Judge. It's more than just drugs in that photo, right? There's more than just drugs in that photo. There's a naked woman in the photo. There's a naked woman in the photo, Your Honor. And it's not just a drug photo. But my point here, Your Honor, is the way that the government has presented this issue to the court, page 7 of its brief. It cites those exact pages, 145 to 47. And what the government says is, we also presented drug photos to Judge Villardo. This issue is waived. The government cannot raise it at oral argument and parse, try to parse through exhibits and say, well, we should have briefed something else. But to be as clear as we can about the waiver argument, what you're saying, and it's possible to read the government's rather brief briefs, and I generally favor brief briefs, in pretty much the time that you've been standing there. And there is not a statement, it seems to me, a clear statement in the briefs, that we have photographs of sexual conduct with escorts post-2020. There's the same sort of rather vague contention on page 3, even as late as the reply brief. The district court's decision cites to R.D.'s statement that the images all depicted her. That's clear error, because of the government's statement at oral argument, referencing A. 147, that the images were not all of her. But once again, there's no reference to dates and no specific description of what those images are. And when you go back to 147, you have the problem that we articulated. Now, the problem, so I see your point that the specific argument that was made today, which you say isn't really the crux of the case anyway, the specific argument that was made today, that we have evidence of sexual activity with escorts involving drugs, roughly speaking, similar sorts of things, that he says he gave up in 2020 is false, because we have the photographic evidence of post-2020 activity of that type that does not involve the girlfriend, is not something that is said in the briefing that we've gotten so far. That's new. Now, the problem for me is, well, okay, but we are here talking about whether someone presents a danger to the community. And if there is evidence in the record that shows continuing behavior of a sort that might demonstrate such danger, that seems to be rather problematic, even if the government took an awfully long time in the process of this appeal to get to the point of telling us about it. Are you maintaining that it's basically waived because they did not make that particular argument in the briefs? Fair enough for you all. I just want to know, that's your argument, right? That is part of my argument, Judge, but I'm certainly not conceding that we have no argument on the merits. I mean, on the merits, the mistake that the government is pointing out about misidentifying who's in all of the photos, that's simply not correct. Judge Villardo knew perfectly well that some of the photos depicted Mr. Fox's girlfriend, some of the photos depicted escorts. What the statement the government's pointing to is this bracketed phrase that Judge Villardo used to refer to the packet of photos that was submitted to the magistrate judge. And he wasn't doing that to describe what evidence had been submitted to him. He was doing that to explain why he found the government's concern with Mr. Fox's sexual preferences not to be a factor that weighed against him. He said, okay, you've described BDSM sex in uncomplimentary terms, but I've also got his girlfriend telling me these photos that you find particularly shocking are her and they're consensual. And that is illustrative of the district judge's conclusion. It's not a factual mistake. And in terms of what the record is and what photos were submitted, and this one particular photo in April of 2021, I think it's really important to step back and remember that we're not just talking about is there a danger? Is there a concern? What we're talking about and what the government had to prove was a strong probability of crimes no matter what conditions Judge Villardo put in place. And the conditions that were on offer in the district court and the ones that Judge Villardo adopted address every avenue by which Mr. Fox had patronized escorts. They can't come to his house because they'll be caught on the security camera and they'll have to contend with his parents who lose the house if he violates. He can't leave the house without triggering the ankle bracelet and again, being caught on the security cameras. He can't contact an escort with his phone or another internet connected device because those devices are all monitored by pretrial services. The underlying addiction that drove his past patronization of escorts is being addressed by mandatory counsel. So it was the government's job to say, why are those conditions insufficient to reasonably assure the safety of the community? Not guarantee, reasonably assure. And they have given one answer to that question. It's 147 to 57 of the record. And that answer is not the conditions are ineffectual. The answer is not he could surreptitiously offend and not be caught. They accept. If he violates, he will be caught and he will be thrown in jail. Its only argument is he is not a rational person. He's going to do this. He knows he'll be caught. He knows the draconian consequences that will immediately follow, but he doesn't care because he's so irresistibly drawn to escorts. And that's why I really want to underscore that the difference between September 2020 and April 2021 is not material when you look at it in the context of what the ultimate question is. The ultimate question is that answer that the government gave. Is that so undeniably correct that it was clear error for Judge Filardo to reject it? The answer is no, partly because of the September 2020 cutoff, which I reemphasize is clear from the record, is supported by the surveillance, by the search warrant, by the escort. Could you clarify, just because we were talking and I know it's sort of short form for argument. We keep talking about the September 2020 cutoff. Where was that assertion made? The September 2020 cutoff, as we're calling it. Where was the assertion? Where will I find that in the record? And where will we find a precise description of what I suppose the defendant was claiming was cut off then? Sure. Drug use, escort use, some combination of all those things. But just so that I know that what we're talking about and I'm not just using a shorthand. Understood, Judge. September 2020 cutoff, you'll find it in the record in 185 of the appendix. That's Judge Filardo's opinion, quoting our submission in which we proffer these facts. Okay. So that's coming from the defense's submission to the district court in connection with the bail motion. And then you're saying he accepted that. That's correct, Judge. But that's where we should be looking at sort of the source of the defense's claim that as of September 2020, he has not paid... So, and that's... So I'm looking at 185. This is helpful. The allegation here is that he has not patronized any escorts and that he has not kept drugs in the house. Well, that's different though. He has not kept drugs in the house since his girlfriend got clean around the spring of 2021. So the September 2020 cutoff is only for patronizing escorts? Precisely. Yes, Judge Nardini, that is correct. That's only... But it's not a claim relating to that's the cutoff date for drugs. Correct. The cutoff date for drugs was when his girlfriend, she entered treatment in spring of 2021. And that's precisely the point I was going to make with respect to these photos that were presented to Judge Villardo. The government presented a few metadata or timestamped photos. The thrust of their argument was, look, Judge, drugs. And drugs are related to the escort activity, so you should be concerned. And that's exactly how they described that very submission in their brief to this court, page seven. We submitted drug photos. That's their point. And our response was, okay, that's April 21. That's entirely consistent with what he has been saying. That's not a contradiction. And even if it were... Well, if the drugs are between the breasts of someone who is not his girlfriend, but is identifiable as an escort, that would contradict the former claim, the claim that he has not patronized escorts since September 2020. Now, maybe that's not provable. I mean, maybe this is a woman other than his girlfriend, but there's no evidence that's an escort. I don't know. But I guess what I wanted... The real question I had was, what Judge Velardo cites is your submission, I take it, docket item three at page seven. Docket item three, as far as I can tell, the government hasn't given us that either, but then neither have you. So is that something that can be supplied if we're going to allow further submissions? So that we could put in context, it's a pretty straightforward, blunt quote. He has not patronized any escorts since September 2020. But, you know, maybe the context will cast some light on it. That's something that's available that could be provided to us. It's something that's available. It could be provided. I don't think you'll find enlightening context. What is it? What is docket number three? Docket number three is our initial brief to the district court on the appeal from the magistrate judge's detention order. And I should point out, the magistrate judge did not have about half of the most important evidence available to him. Did he talk to the pre-trial services officer? Did the magistrate judge? No, no. Your client? I believe, yes. Sometimes you see statements like this in the probation report, and I don't, that I stopped, you know, this is all from the past. I stopped. Is there anything like that in the pre-trial services report? I believe that there is. I believe that this statement is reflected in there, but I'm not certain of that. That was going to be my next question, which is this statement about September 2020 as the cutoff date for escorts, and then the spring of 2021 being the cutoff date for drug use. Is that basically a proffer that you made on behalf of the defendant in the course of this pleading? Or was that itself drawn on one of the recorded statements or the interview with pre-trial? Or, you know, in other words, is there another, is there a source in the record for that? Or was this itself a proffer? Both. We proffered that fact, and it's consistent with the interviews that... I'm not asking whether it's consistent with the interviews. I'm saying, did he say that in one of the interviews? That's what I'm saying. Yes, he said that in the interviews that... Which, which one? Again, just to help us keep track of what data we should be looking at, which sources in the record contain that assertion. So the sources in the record, Your Honor, are, there was a thumb drive that contained the court, it's Exhibit D to Docket 4. And Exhibit D to Docket 4 is a thumb drive that was submitted to Judge Villardo. To your point earlier, Judge Lynch, you recalled correctly that Judge Villardo said, I reviewed everything the parties submitted to me. That's, I believe, 181 of the appendix. It's the portion of his opinion where he's explaining, I've reviewed everything. I considered the various factors. Here's what I'm finding. Among the parties' submissions were these recorded statements. And that's, again, that's Exhibit D of Docket 4. Matt, it's got the recorded statements. And you say statements plural? Well, there are two videos. So the first statement is an interview with investigators. And then they say, well, we've got accusations that you have had nonconsensual sex. He denies it. They say, all right, well, prove it. Take a polygraph. And he says, if that's what you guys need to get off of this, then sure. And he sits down, he takes the polygraph, and he passes. Is that Statement 2? That is. Is that on, let me back up. For now, what's on the thumb drive? You said two statements. Are they both, they're videotaped, number one, right? Correct, they're videotaped. Do either of them include the polygraph or no? Yes. That's the second statement is the polygraph? That's right. Technically, it's the third video file. There's a video of just him sitting in a room waiting while they set up the polygraph. So you'll find three files, three files from the post-arrest statement. Number one is investigators. Number two is him sitting in a room. Number three is the polygraph. Well, one problem I have with all of this on the fly, and I very much appreciate, Mr. Derland, your specificity and your knowledge of the record that enables you to cite all of these things with specificity. But it sounds like what is going to have to happen, if we allow it, is the submission of an entirely new submission by the government with a whole package of material, a new appendix, that might well include all of these documents that you're referring to, as well as the ones that they'd like to refer to. And then supplementary submissions explaining on the government's behalf what it thinks we will find in the material that it now proposes to submit to us, followed, I take it, by a submission from you. I mean, you're likely the opportunity to comment on what they say, if we allow them to say anything, that will similarly reference all of these materials in detail and explain what you think they show or don't show. And so what I'm thinking is maybe we should wait a beat. And before anybody submits anything, we'll decide whether we want anything. And if we want to go down that road, I guess we will then enter an order saying what materials might... some description of what kind of materials can be allowed. It's all got to be stuff from the record below. But what kind of new appendix materials are going to come and what kind of briefing we're going to allow. And I think we can say, I think we're all in agreement. I agree. What Judge Lynch just proposes. Nobody file anything yet. We will let you know. We will issue an order if we would like anything filed. And then we will be specific in terms of what, if anything... To the best of our ability. But the point is going to be, if there's going to be more briefing and it's going to be supported, the statements that are made, factual and legal in the briefing are going to reference materials. Any materials that anybody references are going to have to be provided to us. In some sort of appendix. Well, I mean... If you want to take one minute to wrap up, we've kept you long past your time. But if you want to just summarize your position. Sure. First, I urge the court not to invite further submissions. The rules are the same for the government as for everybody else. They had their chance. They made their argument. It's not a viable argument. That's it. Second, Judge Villardo considered everything. This was not a decision he took lightly. He considered all of the party's submissions. He considered the text messages that the government has belatedly objected to now. He considered all of the facts that support the September 2020 cutoff. And he considered the fact that the government has repeatedly failed to give any sensical explanation for why these series of conditions would not reasonably assure the safety of the community. When even by giving the government's evidence the best possible spin for months upon months upon months with no conditions, no supervision, no one looking over his shoulder, he did not do the thing that the government says he cannot resist doing. So putting aside all of the procedural arguments about why this is waived, not properly submitted by holding up a picture before the district court is not a proper way to make a submission and preserve an issue for appellate review. All of that aside, Judge Villardo carefully considered the record. He did what we expect district judges to do, what he did was not clear error. We ask the court to affirm. Thank you very much. Mr. Mango, you have reserved three minutes for rebuttal. And we'll try to keep it to three minutes because we have already kept both sides up considerably past their time. So why don't you just try to be as concise and efficient as you can. Yes, your honor. Thank you very much. I'd like to start with the waiver argument first. In the government, it's the government's position that you cannot read our opening brief or our reply brief and argue that we waive the argument. Well, your reply brief doesn't count, right? If you don't raise an issue in your blue brief, it's generally deemed waived. That's true, that's true, your honor. So why don't we speak with your blue brief? In our blue brief, we do raise the issue quite clearly because we are arguing that as a whole, the district court judge was clearly erroneous in weighing the factors. And on page 16 of our brief, we do argue whether Fox's solicitation was in the rear view or not. And then further down, to the extent the district court relied on Fox's argument that any conduct was historical, does not mitigate. We don't say we agree. Well, you didn't say you agree, but you have not still cited to us a place where you say the district court was flat out wrong to the extent of this, finding that this was all in the rear view as of September 20. You say whether it was or not, the photographs, et cetera, still reflect the danger he poses, which is a fair argument. I mean, we don't normally say, oh, the guy is charged with robbing three banks a year ago. And therefore, but no one said he's robbed a bank in the last two years. So he's not a danger to the community. I mean, it's a perfectly fair argument you make, but it's a different argument than the argument that says we have proof positive that his statement that it's all in the rear view is just a lie. But in the, before the district court judge in appendix 165, it was near the end of the oral argument. I argued very, I think, strongly, and I use the term ludicrous, that they want to go back into 2020, that he hasn't seen an escort. That, again, in the government's view, is ludicrous. Yes. You're here now. Yes, Your Honor. We're not going to read your blue brief and say, gosh, I wonder if they made additional arguments to the district court. That's correct, Your Honor. And I have to say, I mean, I looked at your discussion, and I understand this brief was expedited on all sides. I understand everyone was in a rush because we made you rush and we wanted to get this argued. The term is ending in about a week. I think next week is the last week merits oral arguments. But one, two, three, four, is it about five pages of discussion? I count about five or six citations to the record, and some of those are citations to the district court's ruling. Usually the discussion has to be grounded in the record, particularly when you're trying to get us to make findings. The district court has made clearly erroneous factual findings. You've got to point us to the facts, meaning the evidence. So I think that we have both the parties' arguments. We understand them. We thank you very much. We will reserve decision. Thank you, Your Honor. Thank you. We would request the ability to present the court with the exhibits. Thank you. And we'll take everything under advisement.